# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONNA J. OLIVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-07-325-FHS-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Donna J. Olive requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on February 21, 1959, and was 47 years old at the time of the administrative hearing. She has a high school education and previously worked as an assembly line worker, home health provider, fast food worker, and quality control worker. The claimant alleges she has been unable to work since December 1, 2004, because of obesity, history of joint pain in the lower extremities, piriformis syndrome, lumbar spondylosis, a history of breast cancer, and depression.

### Procedural History

On December 9, 2004, the claimant protectively filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Both applications were denied. ALJ Lantz McClain conducted a hearing and found that the claimant was not disabled on February 28, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, *i. e.*, that she could lift and/or carry 10 pounds; stand and/or walk with normal breaks for two

hours in an eight-hour workday; and sit with normal breaks for six hours in an eight-hour workday (Tr. 17). The ALJ concluded that although the claimant could not return to her past relevant work, a finding of not disabled was nevertheless directed under Rule 201.28 of the Medical-Vocational Guidelines (Tr. 22).

## Review

The claimant contends that the ALJ erred: (i) by failing to document the file with regard to her conditions; (ii) by failing to recognize all of her severe impairments; (iii) by failing to include all of her limitations in the RFC; and, (iv) by improperly analyzing her credibility. In her second contention, the claimant argues that the ALJ erred by finding her depression was not a severe impairment at step-two of the sequential analysis. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly consider the claimant's mental impairment.

The record reveals that although the claimant denied suffering from depression in November 2004 (Tr. 182), she reported suffering from symptoms of depression, *e. g.*, decreased sleep, decreased interest, decreased energy, decreased appetite, and mild psychomotor retardation, in August 2005. The claimant was assessed with depression, *inter alia*, and prescribed Zoloft and Ambien (Tr. 252-54). At a later appointment in August 2005, the claimant continued to suffer from depression and sleeping problems. Examination revealed that the claimant had depressed affect. Her dosage of Zoloft was increased, her prescription for Ambien was discontinued, and she was instead prescribed Trazodone (Tr. 249-51). By September 2005, the claimant was sleeping better and the medication was

helping her depression. She was to continue taking her current medications (Tr. 246-48). At the claimant's appointment in October 2005, she was told to continue on her medication, and her depression was noted to be "slightly improved." (Tr. 243-45). In December 2005, the claimant's depression was described as "stable" on medication, but it sometimes worsened because of stresses in her life (Tr. 240-42, 270-72). At an emergency room visit in January 2006, the claimant reported that she felt stressed (Tr. 256). In her request for hearing, the claimant reported feeling stressed out and depressed from her cancer and having trouble sleeping (Tr. 49). She listed Zoloft as one of the medications she was currently taking (Tr. 112). The claimant testified at the administrative hearing that her depression was an issue everyday. She had been taking Zoloft for a year and half and reported that the medication did not work. The claimant became stressed easily and did not think she could handle working. It had affected her relationships, especially with her grandchildren. She could no longer deal with them. She also exhibited problems with memory and concentration (Tr. 296-97). When discussing her failure to comply with taking her blood pressure medication, the claimant explained that sometimes, "I just want to give up taking anything for anything." (Tr. 297-98).

The ALJ determined that the claimant had severe impairments of obesity, history of joint pain in the lower extremities, piriformis syndrome, lumbar spondylosis, and a history of breast cancer, but he determined that her depression was a non-severe impairment. The ALJ's entire analysis of the claimant's mental impairment was that "the claimant is not receiving any individual or group therapy for her depression, and has not been prescribed

medications for the treatment of insomnia." (Tr. 16-17). The ALJ's analysis of the claimant's mental impairment was flawed for two reasons.

First, a lack of psychological or psychiatric in-patient or out-patient treatment does not in and of itself support a finding that the claimant's mental impairment was not severe, *see, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 739 (10th Cir. 2007) ("[W]e have found no case authority requiring [a claimant] to obtain medical treatment from [a specialist in the mental health profession] before an ALJ can find that she has a severe mental impairment.") [unpublished opinion], and the claimant did in fact receive medication for her insomnia, *i. e.*, Ambien (Tr. 252-54) and Trazodone (Tr. 249-51). Second, the ALJ failed to employ the "special technique" for mental impairments set forth in 20 C.F.R. § 404.1520a and § 416.920a and to document his findings. *See Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995) ("When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a [and § 416.920a] and the Listing of Impairments and document the procedure accordingly."), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). In conducting a "PRT analysis" pursuant to these regulations, the ALJ must first evaluate whether the claimant has a "medically determinable mental impairment," 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1), and then determine the degree of function that the claimant has lost as a result of the impairment by assessing the claimant's level of

functioning in four specific areas. *Cruse*, 49 F. 3d at 617.[2] *See also Grogan v. Barnhart*, 399 F.3d 1257, 1264 (10th Cir. 2005) ("[T]here is a specific two-step procedure that the Commissioner must follow when determining whether a claimant has a mental impairment. The Commissioner must first evaluate your pertinent symptoms, signs and laboratory findings to determine whether you have a medically determinable mental impairment(s). Then the Commissioner evaluates the impact that the mental impairment has on the claimant's ability to function under 20 C.F.R. § 404.1520a(b)(2), *et seq*.") [citations and quotations omitted]. The ALJ does not have to personally complete a PRT form, but he must document his findings in the decision. 20 C.F.R. §§ 404.1520a(e), 416.920a(e). Here, the ALJ erred because he never specifically determined whether the claimant had a "medically determinable impairment;" he neither applied the "special technique" nor assessed the claimant's degree of functioning in the four broad areas. The undersigned Magistrate Judge may not perform the required analysis for him. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create

---

[2] The four broad areas of function are the following: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and, (iv) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ must assess the degree of functional loss in each area on a five-point scale. The first three areas utilize descriptive terms of none, mild, moderate, marked, and extreme. The fourth area utilizes numerical terms of none, one to two, three, and four or more. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's mental impairment. On remand, the ALJ should conduct a PRT analysis of the claimant's mental impairment pursuant to 20 C.F.R. § 404.1520a and § 416.920a. If the ALJ concludes that the claimant does have a severe mental impairment, he should determine the claimant's functional limitations, include them in an appropriate RFC, and then determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Any objections to this Report and Recommendation must be filed within ten days.

**DATED** this 5th day of January, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**